### FIRST NAT. BANK OF SING SING v. KNEVALS et al.

(Supreme Court, General Term, First Department. January 13, 1893.)

1. NEGOTIABLE INSTRUMENTS—PAYMENT—RENEWAL.

N., who, with his father, constituted the firm of N. & Co., executed a mortgage to H. as security for the firm's notes, payable to the order of H., who indorsed them, and had them discounted by plaintiff bank, for the accommodation of N. & Co., for whose benefit they were renewed at the request of H. At the execution of the mortgage, a collateral agreement in writing was made by H. not to record the mortgage, and to return it as soon as the notes were paid, and that he would take care of certain other notes indorsed by N. & Co. for H.'s benefit. The legal title of the mortgaged property was in N., but his father had an equitable interest therein. When the renewal notes came due, plaintiff refused to renew them again unless the mortgage held by H. was assigned to plaintiff, whereupon, with the consent of N., it was assigned as security, and new notes given. The money received from plaintiff on the discount was paid to H., who gave his check to N. & Co., which was deposited in their general account, and the original notes paid by checks drawn thereon. *Held,* in an action to foreclose, that the taking up of the original notes was not a discharge of the obligation which they evidenced, but that such obligation was renewed by giving the new notes, and the discount thereof by plaintiff at the time the mortgage was assigned as security for such discount.

2. ASSIGNMENT OF MORTGAGE—BONA FIDE PURCHASER.

Where plaintiff took such assignment without knowledge of the collateral agreement made by H., its rights would be equally secure under the mort

gage whether the final transaction was a renewal of the former notes or a new loan, plaintiff in such case taking as a purchaser in good faith for value without notice.

3. SAME—ESTOPPEL.

The assignment of the mortgage as first presented having been agreed to by N. was refused by plaintiff on the ground that it contained a clause which might obligate plaintiff to a further renewal, and it was delivered back to have the clause stricken out. *Held*, where such return for correction was within the understanding of all the parties, and before any notice to plaintiff of N.'s dissent therefrom the corrected assignment was delivered, and thereafter plaintiff discounted the renewal notes of N. & Co. on the faith of such assignment in the presence of N., who had knowledge thereof, and made no further suggestion of its invalidity, that N. & Co. are estopped to deny its validity.

4. SAME—PROCUREMENT BY THREATS.

Where N. and his father throughout their transactions with plaintiff assumed a position consistent only with their holding out to plaintiff the validity of the mortgage to H., they cannot avoid the mortgage on the ground that it was procured by threats of criminal prosecution made by H. against N. & Co.

5. BANKS—CUSTOM—COLLATERAL SECURITY.

Evidence of the custom of banks in holding collaterals pledged for notes as security for renewal offered by N. & Co. as pertinent to the construction of the collateral agreement with H. was properly rejected as having no bearing on plaintiff's rights.

Appeal from judgment on report of referee.

Action by the First National Bank of Sing Sing against Charles W. Nickerson and Ella F. Nickerson, his wife; P. William Nickerson and Amelia Nickerson, his wife; the Tarrytown National Bank; the Third National Bank of the City of New York; the Bowery Bank of the City of New York; and Henry Slingerland, Caleb B. Knevals, and Elihu B. Frost, assignees for the benefit of the creditors of Charles W. Nickerson and P. William Nickerson. From a judgment of foreclosure of a mortgage, defendants Caleb B. Knevals and Elihu B. Frost, assignees for the benefit of creditors of P. W. Nickerson and Charles W. Nickerson, appeal. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

Calvin Frost, for appellants.

Samuel Watson, for respondent.

O'BRIEN, J. This action is brought for the foreclosure of a mortgage upon real estate situate in the city of New York. The defendants Prince W. Nickerson and Charles W. Nickerson, father and son, were during the year 1889 and previous thereto copartners in business in the city of New York under the firm name of P. W. Nickerson & Co. On October 10, 1889, Charles W. Nickerson executed a bond and mortgage to Schuyler Hamilton, Jr., for $40,000, which mortgage was assigned by Hamilton to the plaintiff on the 15th of February, 1890. On the 17th of March, 1890, the firm of Nickerson & Co. made a general assignment for the benefit of creditors to the defendants Knevals and Frost, who, by their answer, attacked the validity of the mortgage, and the plaintiff's right to enforce payment thereof, upon the grounds—First, that the mortgage was procured from the Nickersons by reason of threats made by Hamilton to institute criminal proceedings against them, grow-

ing out of their retention of some $9,000 received in the discount of certain promissory notes for Hamilton; second, that the defendant Charles W. Nickerson, who executed the mortgage, was not the owner of the property, which belonged to his father, Prince W. Nickerson; third, that at the time of the delivery of the bond and mortgage Charles W. Nickerson was not indebted to Hamilton in any sum whatever, but that, as the state of the account between them would show, while Hamilton had indorsed for the firm of Nickerson & Co. notes to the amount of about $40,000, they, on their part, had indorsed for Hamilton notes for twice that amount, which were then outstanding and unpaid; fourth, that the notes for which the mortgage was given as security were paid and satisfied; fifth, that it was an unlawful preference to the bank to appropriate the individual property of Prince W. Nickerson, who was then insolvent, having personal liabilities, to the payment of a copartnership indebtedness.

Upon the facts, some of which were undisputed and others disputed, the referee found, as claimed by the appellants, that the legal title of the lands covered by the mortgage was in the name of Charles W., but his father, Prince W. Nickerson, had an equitable interest therein, and that the legal title remained in Charles W. until after the assignment of the mortgage to plaintiff. That the bond and mortgage were made and executed as security for the payment of nine promissory notes made by Nickerson & Co. to the order of Hamilton, which the latter indorsed and had discounted by the plaintiff for the accommodation of Nickerson & Co.; and that, when the notes became due, eight of them were renewed by plaintiff, at the request of Hamilton, for the benefit and accommodation of Nickerson & Co.; the money received from the discount of such notes and the renewal thereof being paid over by Hamilton to Nickerson & Co. That when the notes given in renewal became due plaintiff refused further to renew the same, or discount other notes in the place thereof, unless the bond or mortgage in question, then held by Hamilton as security for the payment of such notes and the money borrowed of plaintiff thereon, were assigned to the plaintiff; and it was thereupon agreed between the plaintiff Hamilton and Charles W. Nickerson that such bond and mortgage should be assigned to the plaintiff as security for the payment of the notes and of the money borrowed thereon, and which had been discounted for the benefit of Nickerson & Co., of which firm Charles W. Nickerson was a member; such notes and money borrowed thereon amounting in the aggregate to $45,000. That in pursuance of such agreement, and with the knowledge and consent of the mortgagor, such mortgage was assigned to the plaintiff, and upon the faith of such assignment and security the plaintiff, at the request of Charles W. Nickerson, representing the firm of Nickerson & Co., did renew seven of said notes, amounting in the aggregate to $40,000, the eighth note not coming due until after Nickerson & Co. had failed, and made a general assignment for the benefit of creditors. That the notes, to secure which, and the money borrowed thereon, the bond and mortgage were given, were not paid, but were renewed by the plaintiff, and that such renewals, as security for which the mortgage was assigned to plaintiff.

have not been paid, and that such money borrowed has not been paid, and that such notes are now held by the plaintiff, and they amount in the aggregate to $45,000, besides interest.   It also appeared in evidence that at the time the bond and mortgage were delivered to Hamilton the latter signed a paper, in which he agreed that he would not record the mortgage, but would return it as soon as the notes were paid or otherwise satisfied; further agreeing to take care of such notes as had been indorsed by Nickerson & Co. for his (Hamilton's) benefit.   The appellants insist that the terms of this collateral agreement made by Hamilton were known to the plaintiff's president prior to the assignment of the bond and mortgage to it, and upon this is based the claim that knowledge was thus brought home that it was intended as security for the particular notes referred to in Hamilton's agreement, which, as insisted, having been paid by Nickerson & Co., discharged the obligation, and entitled them to have the mortgage canceled and satisfied.

Upon conflicting testimony, the referee found against the appellants on the question of notice to the plaintiff bank, and also found against them upon the fact of payment of the original notes for which the mortgage was originally given as security.   We see no reason for disturbing the conclusion reached by the referee, it being peculiarly a question of fact which, upon conflicting evidence as to whether the plaintiff had notice of Hamilton's collateral agreement, was resolved in plaintiff's favor.   We think, also, that the conclusion of the referee is sustained,— that the transaction resulting in the taking up of the original notes was not a discharge or satisfaction of the obligation which they evidenced, but that such indebtedness or obligation was renewed by the giving of the new notes, and the discount thereof by the plaintiff, at the time the assignment of the mortgage was delivered to it as security for such discount.   It is conceded that the money received from the plaintiff upon such discount was paid to Hamilton, and by the latter given to Nickerson & Co.   Instead, however, of directly applying the Hamilton check to the taking up of the original notes, it was deposited in their general account in their bank, and out of such general account the original notes were paid.   We do not think that any real distinction can be made upon this ground; nor should the Nickersons be allowed to take advantage of the circumstance that, instead of directly appropriating the money for the purpose for which it was obtained, they should have placed it in their general account, and then gone through the form of drawing particular checks therefrom in payment of the original notes.   The entire transaction makes it clearly evident that the Nickersons were desirous of having the original notes renewed, which the plaintiff was reluctant to do except upon receiving collateral security for such renewals; and that it was for the purpose of satisfying the bank's demand in this respect that the Nickersons consented to the assignment of the mortgage by Hamilton to plaintiff.   Had the original assignment, which was presented about February 13, 1890, to the plaintiff, been accepted, no possible question could arise.   But a point is sought to be made that, upon the refusal of the bank to accept the assignment in the form in which it was then presented, containing, as it did, a clause which might seem to obligate

the bank to further renew the notes, the delivery of the assignment back to have this clause stricken out was tantamount to a refusal on the part of the bank to accept the 'assignment, and that thereafter the Nickersons refused to consent to Hamilton's assignment to the bank. The answer, however, to this is to be found in the fact that the return of the assignment for correction, with a request that a new one should be delivered free from the objectionable clause, was within the understanding of all the parties; and the fact that before notice of Nickerson's dissent Hamilton delivered the new assignment to the plaintiff, coupled with the fact that thereafter the bank discounted the renewal notes made by Nickerson & Co. upon the faith of such assignment, is conclusive upon the validity of the assignment. There is evidence, further, to support the view that, subsequent to the date when the new assignment was delivered to the bank, the mortgagor appeared there with Hamilton, the assignment being then present, and without any suggestion of the invalidity of such assignment the discount of the renewal notes was obtained. If the doctrine of estoppel is ever to be applied, it seems to us it should be here upon the facts presented. So far as concerns the bank, the same remark is applicable to the defenses seeking to show the invalidity of the bond and mortgage itself in the hands of Hamilton prior to the assignment to plaintiff. Thus the claim made that it was procured by threats on the part of Hamilton is not available to the Nickersons, nor to their assignees, as against the bank, in view of the fact that in their dealings with the plaintiff both the Nickersons and Hamilton assumed a position consistent only with their holding out to the bank the validity of the bond and mortgage, and upon the faith thereof obtaining the accommodation which resulted in an extension of their indebtedness beyond a period when they became entirely unable to liquidate the same, by reason of their insolvency.

The appellants strenuously insist that there is a preponderance of evidence in favor of the view that the final discount made by the plaintiff was not a renewal of the original notes, but a new loan; and that, as the mortgage was given to secure a former loan, evidenced by notes, which were paid, it could not be regarded as collateral for the notes discounted by the bank subsequent thereto. If we assume, as found by the referee, that the plaintiff had no notice of the collateral agreement made between the Nickersons and Hamilton at the time of the delivery of the bond and mortgage to the latter, the question of whether the final transaction between them and the bank was a renewal of former notes or a new loan is entirely immaterial, for reasons which may be briefly stated. If renewals of the original notes, then the conclusions of law reached by the referee are correct. If, on the other hand, we regard the transaction as a new loan made by the bank to Hamilton and the Nickersons, then plaintiff's rights are equally secure. The bond and mortgage expressed as the consideration an indebtedness from the Nickersons to Hamilton of $40,000, and upon application to the bank it refused to do anything for the accommodation of the parties until it obtained this bond and mortgage as collateral security for any further transactions. Therefore, no matter what may have been the agreement between the Nickersons

and Hamilton,—notice of which was not brought home to the bank,—if, as found in this case, they applied to the plaintiff for additional accommodation, and in conformity with the condition upon which that was to be extended they agreed to and finally delivered an assignment of the bond and mortgage, the bank, in taking the same, relying upon the faith of its validity, and without notice of any flaws in Hamilton's title thereto, upon discounting the notes and giving the money therefor, took exactly as would a purchaser in good faith without notice for a valuable consideration. In addition, upon these facts the doctrine of estoppel already adverted to would clearly apply, because the Nickersons and Hamilton, with full knowledge of the motive actuating the plaintiff in parting with its money, could not have stood by with knowledge of the defects in the validity of the bond and mortgage and permitted the bank to part with its money for their mutual accommodation, and then be allowed to come into a court, and claim that by an arrangement between them the security in the hands of the plaintiff was invalid. It is sufficient, however, to say that, upon the facts as found by the referee, which are sustained by competent evidence, there is abundant law for maintaining his conclusions.

The only exception taken to the referee's ruling upon the evidence relates to his sustaining the objection of plaintiff to questions put to a witness for the defendants as to the custom of banks and business men as to holding collaterals pledged for notes as security for renewal. It is insisted that this was pertinent as to the construction of the agreement of Hamilton contemporaneous with the mortgage. We think this ruling was right, for two reasons: First, that it was incompetent and immaterial to prove any such custom; and, secondly, whether pertinent or not were the action one between Hamilton and the Nickersons, we fail to see, in view of the conclusion reached by the referee, how it could have in any way affected or had a bearing upon the plaintiff's rights. An examination of the entire record will show that there is no serious question of law presented, the whole case having turned upon the findings of the referee upon the facts, which, if sustained by the evidence, inevitably lead to the conclusions reached by him favorable to the plaintiff. It would serve no useful purpose to take up seriatim the assignments of errors to the referee's refusals to find, and the exceptions taken to such facts as he did find, it being sufficient to say that there was evidence tending to support every finding made by him, and sufficient to justify the rejection of those proposed by the defendants and refused, and that as to none of these was the evidence so preponderating in defendants' favor that we would be justified in setting them aside upon the ground that they were against the weight of evidence. Having reached the conclusion, therefore, that the findings were supported by the evidence, and that the referee's conclusion of law was the logical deduction therefrom, we are of opinion that the judgment appealed from should be affirmed, with costs. All concur.